# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**OSCAR H. HOOD,**

        **Plaintiff,**

**-vs-**                                                      **Case No. 6:08-cv-663-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been waived but does not appear useful here.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.    Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on January 31, 2002 (R. 102-04, 331-34), alleging an onset of disability on July 1, 2001, due to headaches, neck and shoulder problems, a hernia, carpal tunnel syndrome, and nerve damage in his left arm, left hand, lower back

and legs, and an affective disorder. R. 102, 113, 331, 335, 340. His application was denied initially and upon reconsideration. R. 45, 335-45. Plaintiff requested a hearing, which was held on May 25, 2004, before Administrative Law Judge Henry U. Snavely (hereinafter referred to as "ALJ"). R. 23. In a decision dated August 20, 2004, the ALJ found Plaintiff not disabled though the date of his decision. R. 31-45. Plaintiff timely filed a Request for Review of the ALJ's decision (R. 67-71), and the Appeals Council remanded the case on July 19, 2006. R. 72-76. Following a supplemental hearing held on March 13, 2007 (R. 407-38), the ALJ again found Plaintiff not disabled on May 1, 2007. R. 11-23. The Appeals Council denied Plaintiff's Request for Review on March 10, 2008. R. 7-10. Plaintiff filed this action for judicial review on April 24, 2008. Doc. No. 1.

**B. Medical History and Findings Summary**

The Plaintiff was born on August 23, 1957. R. 102. He was 49 years old at the time of the supplemental hearing. The Plaintiff has a high school education plus some college course work. R. 119. The Plaintiff has past relevant work as a laborer and maintenance person. R. 126.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of headaches; shoulder problems; a hernia; carpal tunnel syndrome; and nerve damage in his left arm, left hand, lower back and legs. R. 113. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease of the lumbar spine, neck injuries, left-shoulder gunshot wound, bilateral carpal tunnel syndrome, and an affective disorder, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 16. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to stand, walk, and sit six hours in an eight-hour workday, lift twenty

pounds occasionally and ten pounds frequently; Plaintiff was unable to reach with his left hand, had occasional limitations in overhead reaching with the use of the left shoulder and had postural limitations in stooping and crouching, and could perform simple and repetitive tasks on a sustained basis. R. 17. In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the decision. R. 18-21. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 21. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as an usher or door greeter, a cashier, a polypacker heat sealer. R. 22. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 23.

Plaintiff now asserts three points of error. First, he argues that the ALJ erred by failing to fully develop the record. Second, he claims the ALJ erred by finding he had the RFC to perform light work contrary to the opinion of the consultative examiner. Third, Plaintiff contends the ALJ erred by failing to consider the VE's testimony favorable to him. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.

§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments

(considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## *III. ISSUES AND ANALYSIS*

### A. Developing the record

Plaintiff argues the ALJ erred in failing to fully develop the record in not requesting and reviewing all of the emergency room records for Plaintiff. The Commissioner argues the ALJ properly developed the record.

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997). However, the ALJ's duty to develop a full and fair record exists whether or not the applicant is represented. *Brown v. Shalala,* 44 F.3d 931, 934 (11th Cir. 1995). In this case, Plaintiff was represented.

During the hearing, the Plaintiff testified that he had been unable to obtain medical care because he had no insurance and could not afford doctor visits, but Plaintiff then testified that he had been to the Emergency Room stating, "[T]he only thing I can do is if I get bad off I have to go to the emergency room." R. 424. Plaintiff argues based on this testimony that the record is incomplete and the ALJ failed his duty in not requesting this evidence.

The Commissioner argues that the ALJ did not err when he failed to obtain emergency room records from an episode Plaintiff mentioned when he went to the ER after ingesting peanut butter, with apparently some sort of food poisoning or gastrointestinal problem. R. 424-25. The Commissioner contends such records would not have been material to the decision because the

-5-

condition for which Plaintiff was most recently treated was not perceived to be "life-threatening" or expected to last continuously for at least twelve months, in accordance with the regulations, 42 U.S.C. § 423(d)(1)(A). The record is not "devoid" of ER records as Plaintiff argues; the record contains records from: Mount Sinai Medical Center (in Cleveland, Ohio) for the period of 1988 to 1989 (R. 187-223); Health First for March 2000 (R. 229-38); Parish Medical Center in May 2000 (R 242-47).

Although the ER records are somewhat dated, Plaintiff does not mention any particular ER records that are missing (aside from the peanut butter incident which resolved with medication (R. 424-25), at the hearing or in his memorandum of law. Plaintiff mentions no ER visits for the other impairments. Plaintiff was represented by counsel Robert E. McCall, Esq., at the hearing, and Mr. McCall did not raise the issue of any missing records with the ALJ. Accordingly, the ALJ's decision based on the available medical records despite the alleged failure to obtain additional ER records, was based on substantial evidence.

### B.  Consultative examination

Plaintiff argues the ALJ improperly dismissed the consultative opinion of Dr. MacKay and thus, the ALJ's decision is not based on substantial evidence. The Commissioner contends the ALJ properly considered Dr. MacKay's opinion and accorded it the weight warranted by the evidence.

Plaintiff argues that the ALJ erred in failing to give the appropriate weight to the opinion of Nancy MacKay, Psy.D., who performed a consultative examination of Plaintiff on December 14, 2006. R. 360-65. Dr. MacKay diagnosed Pain Disorder Due to Psychological Factors and a General Medical Condition, and Personality Disorder, not otherwise specified (NOS), Psychosocial Stressors: unemployment, health problems, Level of Severity: moderate, with a Global Assessment of Functioning Score (GAF) of 51. R. 362. A GAF score of 51 which indicates moderate symptoms.

Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) (DSM-IV). Dr. MacKay opined that the Plaintiff displayed marked restrictions in his ability to make judgments on simple work-related decisions and in his ability to interact appropriately with supervisors; she opined he suffered moderate restrictions in his ability to understand, remember and carry out detailed instructions, to interact appropriately with the public and co-workers and to respond appropriately to work pressures in a usual work setting. (R. 363-64.)

The ALJ accurately described the findings of Dr. MacKay from Plaintiff's consultative examination:

> The claimant underwent a consultative psychological evaluation with Nancy MacKay, Psy.D. in December 2006. There was no notable impairment to hearing or motor coordination. Mood was appropriate to situation, and his affect was congruent. He was quite articulate. He was able to repeat five digits forward and three backwards. He was able to recall three of three words after five minutes. He was able to spell the word WORLD backwards. He correctly interpreted proverbs. Personality testing indicated symptoms of somatization, resentment, and distrust of others. He had low frustration tolerance, depression, and difficulty getting along with others. The diagnostic impressions were a pain disorder due to psychological factors and a general medical condition, and a personality disorder, not otherwise specified. Dr. MacKay completed a medical-source statement of ability to do work related activities and opined that the claimant had no-to-slight limitations in his ability to remember and carry out short, simple instructions. He had moderate limitations with detailed instructions. Dr. MacKay opined that the claimant had marked limitations in his ability to make judgments on simple work-related decisions. Dr. MacKay felt that the claimant had marked limitations in his ability to interact appropriately with the public, co-workers, and work pressures. She opined that the claimant had marked limitations in his ability to interact appropriately with supervisors. The claimant had no restrictions of his activities of daily living and no episodes of decompensation.

R. 19.

However, the ALJ discounted Dr. MacKay's opinion that the claimant had marked limitations in certain categories, based on other evidence:

> A State Agency psychologist had the opportunity to evaluate the claimant's mental capacity and opined that the claimant had no limitations in his ability to remember,

-7-

understand, and carry out simple instructions with moderate limitations with detailed instructions and to maintain attention and concentration for extended periods. There were no limitations in social functioning other than some moderate limitations in the claimant's ability to accept criticism from supervisors. Dr. MacKay did opine in a couple areas that the claimant had marked limitations in his ability to make simple work-related decisions and marked limitations to interact appropriately with supervisors. She felt that he had moderate limitations to interact with the public, supervisors and coworkers. She based this upon personality testing. Yet, this evaluation is not supported by the claimant's activities of daily living nor the other evidence of record. Even in Dr. MacKay's mental-status examination, the claimant was quite articulate. There were no signs of depression or anxiety. He was able to recall on memory testing, calculate and subtract correctly, and interpreted proverbs. In fact, the claimant is under no mental-health treatment nor taking any psychotropic medications. He did not testify to any mental disorder. I only agree with Dr. MacKay's opinion that the claimant has no limitations in performing and carrying out simple and repetitive tasks as well as no limitations with activities of daily living. The evidence certainly does not support any marked limitations in any other area based upon his overall activities. He takes care of his personal needs, cooks, and cleans. He is able to drive and enjoys cooking. He does the laundry and tries to do the lawn care at home. The claimant reported that he does odd jobs for friends such as cleaning, painting, and landscaping. Other reports show that he gets along well with his family. The claimant even reported to Dr. Rivera that he is very familiar with how to use a computer indicating no more than slight to moderate limitations in his ability to concentrate. These activities do not support his allegations of incapacitating limitations either physically or mentally. Therefore, I agree with the State Agency that the claimant can perform simple and repetitive tasks consistent with unskilled work activity.

R 20-21 (internal citations omitted).

The Commissioner contends the ALJ's decision was based on substantial evidence because Dr. MacKay's report of Plaintiff's consultative evaluation was very brief and lacked objective observations or clinical findings. (R. 360-62.) The Commissioner points to some of Dr. MacKay's other observations during the examination indicating that Plaintiff was only moderately impaired: Plaintiff showed good eye contact and was cooperative and quite articulate; he described multiple health problems and chronic pain; his personality testing showed a tendency to react to psychological stress with somatization, resentment, and distrust of others, low frustration tolerance, depression, and

difficulty relating to others. R. 361-62. The Commissioner argues that despite Dr. MacKay's diagnosis of a moderate condition, she assigned Plaintiff marked limitations in the ability to make judgments on simple work-related decisions and to interact appropriately with supervisors. R. 363-65.

The Commissioner also disputes Dr. MacKay's assessment that Plaintiff had marked limitations in the ability to interact given Plaintiff's ability to maintain his friendships and to function independently. Plaintiff testified that he had many of his friends who loved him so much that they arranged for him to perform odd jobs so that he could afford to pay his monthly rent of $700.00 for the past five to six years (R. 383, 418-19); he hoped to run a restaurant someday and the only obstacle was a lack of funding. R. 421-22.

The Commissioner also argues that the ALJ gave Dr. MacKay's opinion the proper weight because MacKay's was not a treating source and her opinion did not deserve controlling weight because it was not supported by objective evidence and conflicted with the opinions of the non-examining physicians, citing 20 C.F.R. §§ 404.1527(d), 416.927(d). The Commissioner further argues Dr. MacKay's opinion appeared to be based more heavily on Plaintiff's descriptions of physical problems rather than on any alleged independent psychological impairments, and the ALJ properly resolved the conflicts in the evidence by relying on the opinions of the non-examining physicians who are experts in social security disability evaluation, by finding that Plaintiff had the RFC to perform simple and repetitive tasks on a sustained basis. R. 17, 299-303, 313-16.

Plaintiff argues that the ALJ erred in discounting the "marked" limitations in Dr. MacKay's opinion because Dr. MacKay's opinion that Plaintiff displays marked limitations in mental functioning is supported by other evidence of record, such as the psychological evaluation performed by Dr. Bernstein, which revealed depressive disorder secondary to general medical condition with

stress aggravating physical factors and dependent and antisocial personality traits. R. 262. Dr. Bernstein opined in 2002, "[I]t seems as if this subject can barely function at a low level of efficiency with major incapacity." R. 262. However, Dr. Bernstein noted during the exam that Plaintiff's level of distress was "mild," and he was slightly arrogant and demanding; pain and discomfort were manifest but the subject seemed "too severe" secondary to general medical condition. R. 260. On the personality test (MMPI-2) Plaintiff reported and endorsed items, but "only what he want[ed] you to know about him." R. 261. "[O]ver-reaction to minor stress may show rapid behavioral deterioration. Issues related to mood swings and poor effective controls are shown." R. 262. These characteristics led Dr. Bernstein to opine that "individuals with similar presentations may be immature and self-indulgent . . . make excessive and unrealistic demands on others, mistrustful of the motivation of others . . . [with] personality adjustment problems." R. 262. Although Plaintiff's "personality traits [were] contributory" to Plaintiff's depression diagnosis, Dr. Bernstein's diagnosis was that Plaintiff's general physical condition was "severe" and he strongly advised evaluation and referral for neurologic and orthopedic treatment. R. 262.

Plaintiff also objects to the ALJ's reliance on the opinions of the State Agency doctors to contradict Dr. MacKay's opinion because she performed the only consultive examination of the record ordered by the Social Security Administration. However, the two non-examining State Agency reviewing psychologists, consistent with Dr. Bernstein's diagnosis, opined Plaintiffs' depression was secondary to his medical condition. R. 287, 320. Both State Agency psychologists opined Plaintiff had several "moderate" limitations, but no "marked" limitations. R. 299-300, 313-14.

Plaintiff also cites the opinions of Certified Vocational Evaluator Joyce Johnson and Vocational Rehabilitation Counselor Eugene Bryant that Plaintiff was unable to complete vocational

-10-

training or to work competitively. These vocational evaluators were employed by the Florida Department of Education to assist Plaintiff in vocational rehabilitation given his past skills and experience; they are not responsible for determining whether he is disabled under the social security regulations of performing his past relevant work or other work in the national economy, which is the ALJ's responsibility. There opinions had no bearing on the ALJ's decision and he need not give their opinions any weight.

As the ALJ stated in his decision, there is no record of Plaintiff receiving any mental health treatment, or having been prescribed any psychotropic medications. R. 399. As the Commissioner points out, other than being diagnosed during consultative examinations – in April 2002 – with depressive disorder secondary to general medical condition, and in 2006 with Pain Disorder and a personality disorder not otherwise specified, Plaintiff never complained to a treating physician about a psychological impairment, nor had he been diagnosed with mental health issues by a treating physician. When the ALJ asked at the May 25, 2004 hearing whether Plaintiff was seeing a physician for mental health treatment, Plaintiff responded that he was not because he just did not feel like it would be beneficial to him, "to waste their time to try to convince me that I'm okay." R. 399.

The ALJ's decision to discount Dr. MacKay's opinion that Plaintiff had certain "marked" limitations was based on substantial evidence. Accordingly, good cause existed for the ALJ's failure to credit Dr. MacKay's opinion.

**C. Hypothetical**

Plaintiff argues the ALJ erred in rejecting the VE's testimony that was favorable to Plaintiff. The Commissioner contends the VE's testimony and the ALJ's reliance on it were based on substantial evidence.

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id*. at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

> In discussing Plaintiff's ability to perform other work in the national economy, the ALJ found: Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of not disabled is therefore appropriate under the framework of the above-cited rule.

R. 22. Plaintiff contends the ALJ erred in ignoring contrary testimony of the VE elicited during the hearing by Plaintiff's counsel. When questioned about the "marked" restrictions imposed by Dr. MacKay (R. 360-65), the VE testified that the Plaintiff would not be able to perform any of his past relevant work or any other work in the national economy. R. 437. Plaintiff argues the ALJ erred in disregarding this testimony by the VE.

The Commissioner argues that the VE's testimony provided substantial evidence to support the ALJ's decision in response to a hypothetical question which included all the credible limitations. The VE testified that the hypothetical individual with the limitations proposed by the ALJ could work as an usher/door greeter (122,000 jobs in nation), cashier (2,000,000 jobs in nation) and poly packer heat sealer (331,000 jobs in nation). R. 434. The Commissioner argues the ALJ was not required to accept the VE's testimony in response to a hypothetical question that included Dr. MacKay's unsupported opinion.

Here, the ALJ proposed a hypothetical based on the restrictions that he found supported by the evidence and relied on the VE testimony in response to that hypothetical question which accurately reflected Plaintiff's impairments. As discussed above, the ALJ properly considered and discounted Dr. MacKay's opinion that Plaintiff had certain "marked" limitations. The ALJ's failure to include these limitations in his hypothetical to the VE, and his rejection of the hypothetical by Plaintiff's counsel which included those limitations, was based on substantial evidence.

### *IV. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities are affected by his ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 10, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record